UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JEFF NYE, | ) | CIV. 12-5028-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON PLAINTIFF'S** |
| vs. | ) | **MOTION TO COMPEL** |
| | ) | **AND DEFENDANT'S REQUEST** |
| THE HARTFORD ACCIDENT AND | ) | **FOR PROTECTIVE ORDER** |
| INDEMNITY COMPANY, | ) | [DOCKET NOS. 16 & 24] |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

This diversity action is before the court on plaintiff Jeff Nye's complaint against defendant The Hartford Accident and Indemnity Company ("The Hartford") alleging bad faith, intentional infliction of emotional distress, vexatious refusal to pay, and seeking punitive damages.  See Docket No. 1-1. Pending is Mr. Nye's motion to compel defendant to respond to certain discovery requests that Mr. Nye served on The Hartford.  See Docket No. 16. Defendant resists this motion and filed a separate motion for a protective order. See Docket Nos. 24 and 28.  The Chief District Judge, the Honorable Jeffrey L. Viken, referred these motions to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

1

**FACTS**

The facts relevant to the pending motion are as follows.  On August 2, 2006, Jeff Nye injured his lower back while working at Knology, Inc., formerly known as Prairie Wave Communications ("Knology").  Mr. Nye was injured while he performed typical employment duties in a warehouse environment. The Hartford accepted coverage of this claim.  Mr. Nye's treatment for his back injury included physical therapy, pain relief injections, several spinal fusion surgeries, and chiropractic treatment.  Mr. Nye suffers from failed back syndrome and chronic pain syndrome.

At various points in his treatment, Mr. Nye was released to return to work with various restrictions, such as weight limitations.  In April 2008, Mr. Nye's treatment providers recommended a sedentary restriction.  Knology was unable to find a suitable position to accommodate this restriction and Mr. Nye was terminated from his employment in December 2008.  Mr. Nye continued receiving medical treatment.  According to The Hartford, in April 2009 an initial petition was filed with the South Dakota Department of Labor seeking a determination of total and permanent disability; Mr. Nye apparently contacted The Hartford stating that he did not authorize this petition and that he did not wish to proceed with the petition.  Mr. Nye's counsel dismissed the initial petition without prejudice.

In July 2009, Dr. J. Parker Mickle, Physician Advisor for The Hartford,

2

determined that Mr. Nye could not return to his previous employment.  In
August 2009, Mr. Nye's personal physician, Dr. Chris Dietrich, determined that
Mr. Nye was unable to work.

In September 2009, The Hartford determined that Mr. Nye was
permanently partially disabled and began the process of compensating Mr. Nye
through worker's compensation.  According to The Hartford, Mr. Nye retained
counsel rather than complete the forms regarding permanent partial disability.
In November 2009, Mr. Nye filed another petition with the South Dakota
Department of Labor, asserting permanent and total disability.  The Hartford
alleges that it complied with South Dakota law in compensating Mr. Nye with
benefits according to his condition at the time.  The Hartford states that it
stopped making payments in April 2010 because the benefits available under
the policy were exhausted.

On September 12, 2010, the Social Security Administration determined
that Mr. Nye was disabled as of February 11, 2008.  Mr. Nye and The Hartford
reached a settlement on August 11, 2011, which stipulated that Mr. Nye is
permanently and totally disabled.  Mr. Nye alleges that he incurred substantial
costs and a reduction in disability benefits because he had to retain counsel to
reinstate his worker's compensation benefits.

Mr. Nye alleges that The Hartford mishandled his worker's compensation
claim.  He filed a complaint in the Seventh Judicial Circuit of South Dakota,

alleging bad faith, intentional infliction of emotional distress, vexatious refusal to pay, and seeking punitive damages. The Hartford removed this lawsuit to federal court based on diversity jurisdiction.

Counsel for Mr. Nye served The Hartford with Plaintiff's First Set of Requests for Production of Documents on September 10, 2012. The Hartford served plaintiff with responses to these requests on October 10, 2012, but did not provide any documents. Plaintiff's counsel sent a letter to counsel for the Hartford on October 15, 2012, citing District of South Dakota orders on discovery requests. Counsel engaged in several telephone conferences to attempt to resolve these differences before filing the instant motions. Mr. Nye filed a motion to compel defendant to produce the requested documents. Docket No. 16. The Hartford filed a motion for a protective order, seeking to limit the scope of plaintiff's requests. Docket No. 24.

## DISCUSSION

### A.   Good Faith Certification

Mr. Nye's counsel has certified that he contacted opposing counsel numerous times prior to filing the instant motion to compel and attempted in good faith to resolve the parties' discovery dispute. <u>See</u> Docket Nos. 16 and 18-2. Similarly, The Hartford filed a certification asserting that counsel had attempted to resolve discovery issues before filing a motion for protective order. Docket No. 26. Thus, the court finds that the good faith requirements of

4

D.S.D. Local Rule 37.1 and Federal Rule of Civil Procedure 37 have been met.

## B.   Scope of Discovery in a Civil Case

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to

electronic discovery and other objections to providing discovery:

> (B)   *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

> (C)   *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> > (i)   the discovery sought is unreasonably cumulative or duplicative, or can be

> obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

See FED. R. CIV. P. 26(b)(2)(B) and (C).  If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between discoverability and admissibility of

6

evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of

evidence assume the task of keeping out incompetent, unreliable, or prejudicial

evidence at trial.  These considerations, however, are not inherent barriers to

discovery.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1)

provide guidance on how courts should define the scope of discovery in a

particular case:

> Under the amended provisions, if there is an objection that discovery
> goes beyond material relevant to the parties' claims or defenses, the
> court would become involved to determine whether the discovery is
> relevant to the claims or defenses and, if not, whether good cause
> exists for authorizing it so long as it is relevant to the subject matter
> of the action.  The good-cause standard warranting broader discovery
> is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the
> actual claims and defenses involved in the action.  The dividing line
> between information relevant to the claims and defenses and that
> relevant only to the subject matter of the action cannot be defined
> with precision.  A variety of types of information not directly pertinent
> to the incident in suit could be relevant to the claims or defenses
> raised in a given action.  For example, other incidents of the same
> type, or involving the same product, could be properly discoverable
> under the revised standard . . . .  In each instance, the determination
> whether such information is discoverable because it is relevant to the
> claims or defenses depends on the circumstances of the pending
> action.
>
> The rule change signals to the court that it has the authority to
> confine discovery to the claims and defenses asserted in the
> pleadings, and signals to the parties that they have no entitlement to
> discovery to develop new claims or defenses that are not already
> identified in the pleadings. . . . When judicial intervention is invoked,
> the actual scope of discovery should be determined according to the
> reasonable needs of the action.  The court may permit broader

> discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.  The advisory committee also cautions courts to keep in mind that decisions as to relevance at the discovery stage are being made "well in advance of trial."  Id. (1970 amendment).  Therefore, a "flexible treatment of relevance [at the discovery stage] is required. . ."  Id.

 The party seeking discovery must make a threshold showing of relevance before production of the requested information is required.  Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).  "Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' "  E.E.O.C. v. Woodmen of the World Life Ins. Society, No. 8-03-CV-165, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).  Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence."  See FED. R. CIV. P. 26(b)(1)

8

advisory committee's note (2000 amendment).

Once the party seeking discovery establishes the threshold relevance of the requested information, the burden shifts to the party resisting discovery to demonstrate some valid reason not to provide the discovery.  Penford Corp. v. Nat'l Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit . . ."  See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit.").

"All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."  Cont' Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (internal citation omitted).  The articulation of mere conclusory objections that something is "overly broad, burdensome, oppressive, or irrelevant" is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons

*why* the relevant discovery should not be had.  <u>Cincinnati Ins. Co. v. Fine Home Managers, Inc.</u>, No. 4-09-CV-234, 2010 WL 2990118, *1 (E.D. Mo. July 27, 2010); <u>Burns v. Imagine Films Entm't, Inc.</u>, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).  "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support."  <u>Hohn v. BSNF Ry. Co.</u>, No. 8-05-CV-552, 2007 WL 2572440 at *3 (D. Neb. May 10, 2007); <u>see also</u> <u>Rubin v. Islamic Republic of Iran</u>, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

Mr. Nye's claims are bad faith, intentional infliction of emotional distress ("IIED"), and vexatious refusal to pay.  He requests both compensatory and punitive damages.

To prove that The Hartford acted in bad faith, Mr. Nye must show that The Hartford had no reasonable basis for denying benefits, and that it acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of policy benefits.  <u>See</u> <u>Sawyer v. Farm Bureau Mut. Ins. Co.</u>, 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.  To assert a claim of intentional infliction of emotional distress against The Hartford, Mr. Nye must show four elements: (1) an act by The Hartford amounted to extreme and outrageous conduct; (2) The Hartford intended to cause Mr. Nye severe emotional distress; (3) The Hartford's conduct was the cause-in-fact of Mr. Nye's distress; and (4) Mr. Nye suffered an extreme disabling emotional response to The Hartford's conduct.

10

<u>Fix v. First State Bank of Roscoe</u>, 2011 S.D. 80, ¶ 19, 807 N.W.2d 612, 618.
Plaintiff may establish the second element by showing the defendant acted
recklessly, as opposed to intentionally.  <u>Petersen v. Sioux Valley Hosp. Ass'n.</u>,
491 N.W.2d 467, 469 (S.D. 1992); see <u>Wangen v. Knudson</u>, 428 N.W.2d 242
(S.D. 1988).

Mr. Nye also alleges The Hartford's actions amount to vexatious refusal
to pay insurance benefits in violation of South Dakota law.  In South Dakota,
an insured may recover the costs of its attorney fees in an action against an
insurer who "has refused to pay the full amount of such loss, and that such
refusal is vexatious or without reasonable cause."  SDCL § 58-12-3.  The court
must determine three issues before it can award attorney fees:  "First, whether
the insurance company refused to pay the full amount of a loss.  Second,
whether the refusal was vexatious or without reasonable cause.  And third,
what is a reasonable charge for the work performed to enforce the insurance
contract claim, vis-a-vis any other claims jointly brought."  <u>Tripp v. Western</u>
<u>Nat. Mut. Ins. Co.</u>, 2010 WL 4791819, *1; Civ. No. 09–4023, Docket No. 105, at
3 (D.S.D. Nov. 17, 2010) (citing <u>Biegler v. Am. Family Mut. Ins. Co.</u>, 2001 S.D.
13, ¶ 56, 621 N.W.2d 592, 606).

Mr. Nye also requests punitive damages "in order to punish and deter
Defendant from continuing in this course of conduct."  Docket No. 1-1 at 5.
Because he is seeking punitive damages, Mr. Nye must show that The Hartford

11

acted with malice, actual or implied.  See Bertelsen v. Allstate Ins. Co., 2011 S.D. 13, ¶ 39, 796 N.W.2d 685, 698–99 (citing SDCL § 21–3–2).  "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill-will towards that person." Id. at ¶ 40, 796 N.W. 2d at 699 (quoting Biegler, 2001 S.D. 13, ¶ 45, 621 N.W.2d at 605). Implied malice can be inferred or imputed by law.  Id.  "Presumed malice may not 'be motivated by hatred or ill-will but is present when a person acts willfully or wantonly to the injury of others.' " Id. (quoting Biegler, 2001 S.D. 13, ¶ 45, 621 N.W.2d at 605).  When a party seeks punitive damages, the jury must evaluate "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Roth v. Farner–Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665–66 (citing State Farm v. Campbell, 538 U.S. 408, 418 (2003)). The jury may consider evidence that the harm caused to a plaintiff was a company policy or practice.  Id. at ¶ 65, 667 N.W.2d at 669.  With these claims in mind, the court turns to the instant discovery dispute.

## C.    Defendant's Request for Protective Order and Procedural History

Because the grant of a confidentiality agreement or protective order would affect plaintiff's outstanding discovery requests and motion to compel,

12

this court will address the defendant's motion for protective order first.

The Hartford moves for a protective order to limit the scope of plaintiff's discovery requests and alleviate privacy and proprietary concerns.  Docket No. 25.  Defendant's motion also objects to the plaintiff's motion to compel and includes substantial discussion of the facts and lawsuit at issue.  The Hartford "vehemently denies that it ever acted in bad faith."  Id. at 2.  The proper way to raise such an argument is via a dispositive motion under Federal Rules of Civil Procedure 12(b)(6) or 56, not through discovery objections.

The Hartford mentions a stipulated confidentiality agreement [Docket No. 25 at 23], but the motion requests relief beyond that confidentiality agreement.  At first, The Hartford asserts "[t]his motion does not seek an Order that Hartford does not need to comply with Plaintiff's discovery requests; rather, it seeks an Order confining discovery to a reasonable scope."  Docket No. 25 at 2.  The Hartford later states:  "Hartford requests that the Court enter an Order on each of these requests that Hartford does not need to produce the requested documents and limiting the scope of the requests."  Id. at 15-16.

The Hartford later filed a formal response to plaintiff's motion to compel, which incorporates the motion for protective order and essentially reiterates the same objections.  Docket No. 28.  Mr. Nye filed a reply in support of his own motion to compel and in opposition to The Hartford's motion for protective order.  Docket No. 33.  The Hartford then filed a reply in support of its motion

13

for protective order.  Docket No. 35.

### 1.    Standards Governing Requests for Protective Orders

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order by the court, as follows:

(c) Protective Orders.

> (1) In General.  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending–or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> > (A) forbidding the disclosure or discovery;
> >
> > (B) specifying terms, including time and place, for the disclosure or discovery;
> >
> > (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> >
> > (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> >
> > (E) designating the persons who may be present while the discovery is conducted;
> >
> > (F) requiring that a deposition be sealed and opened only on court order;
> >
> > (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.
>
> (2) Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.
>
> (3) Awarding Expenses. Rule 37(a)(5) applies to the award of expenses.

See Fed R. Civ. P. 26(c).

Rule 26(c) confers " 'broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.' " Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)).  Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party.  Id. The movant must articulate a particular and specific demonstration of fact, as distinguished from "stereotyped and conclusory statements."  Id.

## 2.   Stipulated Confidentiality Agreement

The Hartford wishes to protect confidential information such as claim standards and personnel information.  Since the filing of the motion for protective order, the parties have filed an executed confidentiality agreement. Docket No. 36-1.[1]  Good cause appearing, Defendant's motion for a protective

---

[1] In his reply, Mr. Nye states that he executed this document on February 19, 2012, but the confidentiality agreement clearly states 2013 as the year of

15

order is granted in part as to the confidentiality agreement.  Defendant's

requests to limit the scope of discovery will be discussed below.

**D.    Individual Discovery Requests:  Plaintiff's Requests for Production of Documents**

    **1.    The Hartford's General Objections**

At the outset of its response to Plaintiff's First Request for Production of

Documents, The Hartford states a "General Response" and "General

Objections."  Docket No. 18-1 at 1-3.  Mr. Nye argues that these objections

should be dismissed without discussion.  In response, The Hartford notes that

it does not rely on the "General Objections," because it specifically stated the

basis for objection for each discovery request.

To the extent that defendants has interposed boilerplate objections to

Mr. Nye's requests for production before providing the substance of defendants'

responses to the requests for production, the court overrules those boilerplate

objections.  "[B]oilerplate objections are unacceptable."  Kooima v. Zacklift

Intern. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002).  "The party resisting discovery

must show specifically how each interrogatory or request for production is not

relevant or how each question is overly broad, burdensome or oppressive."  Id.

(citing St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 512

(N.D. Iowa 2000)).

---

execution.

16

### 2.      Plaintiff's Request No. 5: Claims Manuals

Plaintiff's Request for Production of Documents No. 5 reads as follows:

All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication that were **IN EFFECT AT ANY TIME FROM 2004 TO PRESENT** that are directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of defendant Hartford in the handling of claims, that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation;

   a.   The documents reflecting defendant Hartford's claim settlement policies as they existed at the time defendant denied the claim at issue in this action.

   b.   The documents reflecting any subsequent change in policy.

Docket No. 18-1 at 5-6 (emphasis in original).

The Hartford objected on four grounds.  Id. at 6.  First, The Hartford argues that this request is overly broad because it is not limited in time, subject matter, or territory.  Second, The Hartford claims that the request is irrelevant to the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence.  The Hartford argues that documents and information presented to employees who have no knowledge of Mr. Nye's worker's compensation claim are irrelevant to this lawsuit.  The Hartford also claims that the request sought information that is proprietary and confidential, including trade secrets.  Finally, The Hartford objected on the basis that the information is requested primarily to cause undue expense and that the

17

prejudice associated with producing the requested documents outweighs any potential probative value.  Id.

Mr. Nye asserts the claims manuals will be relevant to show the procedures followed by claims adjusters when an injured employee cannot return to work due to a disability.  Mr. Nye anticipates that these manuals will instruct adjusters on applicable law, which will be relevant to whether the claims adjusters knowingly violated South Dakota law.  Docket No. 17 at 10.

The Hartford agreed to provide, pursuant to a confidentiality agreement, the following worker's compensation claims standards:  Compensability Investigation, Medical Investigation, Permanent Partial Disability, Return to Work, Indemnity Payment, Oversight, Reserve, Independent Medical Exam, Claim Handler Medical Management, and Claim Handler Medical Report Review.  Docket Nos. 25 at 22 and 28 at 6.  The Hartford asserts that these standards address all of the direct and peripheral issues present in Mr. Nye's claim and that these are the materials claims adjusters would have consulted while evaluating Mr. Nye's claim.  Docket No. 25 at 23.

Mr. Nye continues to request *all* claims manuals "that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action."  Docket Nos. 18-1, 33.  Mr. Nye notes that The Hartford admits that it maintains an index of worker's compensation claims handling standards.  Docket No. 33 at 3 n.1 (citing

18

Docket No. 25 at 28).  Mr. Nye states that The Hartford has not specifically

stated why providing all claims manuals will be unduly burdensome.

    This court has previously discussed the discoverability of claims

manuals.  Signature Dev., LLC v. Mid-Continent Cas. Co., No. 11-5019, 2012

WL 4321322, at *12 (D.S.D. Sept. 18, 2012); see also Hurley v. State Farm

Mut. Auto Ins. Co., 2012 WL 1600796, *5 (D.S.D. 2012); Brown Bear v. Cuna

Mut. Group, 266 F.R.D. 310, 329 (D.S.D. 2009).  In Hurley v. State Farm, the

plaintiff moved to compel discovery relating to his bad faith action against State

Farm.  Hurley, 2012 WL 1600796, at *1.  The plaintiff sought to recover under

the underinsured motorist ("UIM") provisions of his policy.  Id.  The district

court ordered State Farm to produce the entire Automobile Insurance

Company's claims manual, finding that this claims manual could lead to

relevant information "relating to how UIM claims are handled."  Id. at *5.

    Similarly, in Brown Bear v. Cuna Mut. Group, the plaintiff's claims

manuals request was limited to the "How to file a total disability claim"

provision of the policy in dispute.  Brown Bear, 266 F.R.D. at 329.  This court

found that this information could reasonably lead to evidence regarding how

policy language was applied to different policyholders.  Id.  In each of these

cases, the requests were tailored to claims manuals relevant to the claim at

issue.

    Although the scope of discovery is quite broad, "litigants seeking to

compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." <u>Woodmen of the World Life Ins. Society</u>, 2007 WL 1217919 at *1 (citing <u>Cervantes</u>, 464 F.2d at 994).  Mr. Nye has not met his threshold burden to show that *all* claims manuals are relevant to this litigation.

The court finds that worker's compensation claims manuals may be relevant to determine the processes followed by claims adjusters.  Additionally, worker's compensation manuals would have a direct bearing on whether The Hartford followed its own procedures and South Dakota law when processing Mr. Nye's claim.  Mr. Nye has established the threshold relevance of the requested documents as to workers' compensation claims manual.  The Hartford has only agreed to produce a subset of the worker's compensation claims manual.  The burden now shifts to The Hartford to demonstrate why full discovery of all workers' compensation claims manuals should not be provided.

The Hartford asserts that the subset[2] of the worker's compensation claims manual it has agreed to provide "should be sufficient."  Docket No. 25 at 23.  This court notes that Mr. Nye could not have requested specific standards from the worker's compensation manual as he does not have the index to the

---

[2] The Hartford agrees to provide the following standards:  Compensability Investigation, Medical Investigation, Permanent Partial Disability, Return to Work, Indemnity Payment, Oversight, Reserve, Independent Medical Exam, Claim Handler Medical Management, and Claim Handler Medical Report Review. Docket No. 25 at 22.

manual.  The Hartford explains that "the reluctance to provide the index was predicated on Plaintiff's counsel's continued insistence that Hartford provide all materials conceivably falling within the scope of the request."  Docket No. 35 at 5.  The Hartford does not assert any specific facts to demonstrate *why* providing the entire worker's compensation manual is burdensome.

The Hartford requests *in camera* review of any further claims manuals the court orders The Hartford to produce.  Docket No. 25 at 23.  But defendant cites no authority or legal reason for this additional step.  As discussed above, the court will grant a protective order incorporating the terms of the stipulated confidentiality agreement.  *In camera* review is usually used when sensitive or confidential information is at issue and the court must determine whether it should be produced and, if so, what protections need be erected prior to production.  That has already been done by the parties in this case via the confidentiality agreement.  The court sees no need for *in camera* review and defendant has not adequately supported the request for such review.

Therefore, Mr. Nye's motion to compel is granted as to the *entire* worker's compensation claims manual.  Any required disclosure will be in accordance with the parties stipulated confidentiality agreement.  The Hartford's request to limit production to a subset of worker's compensation claims standards is denied.  Mr. Nye's request for *all* claims manuals is likewise denied.

21

### 3.    Plaintiff's Request No. 6: Personnel Files

Plaintiff's Request for Production of Documents No. 6 reads as follows:

> Copies of all personnel filed of each person who handled, reviewed, supervised, and/or audited the Plaintiff's claim with Defendant, including all persons in the chain of command above these individuals up to the head of the claims department.  This request includes, but is not limited to, the following individuals:  Lee Ann Lucas; Cory Blakeman; Bill Campbell; Wanda Hall; John Hopp; Tom Melgoza; Janet Thomas.

Docket No. 18-1 at 6.  Mr. Nye agreed that none of these documents would be used for any purpose outside of this lawsuit or disseminated to the public without first redacting the employee's identifying information.  Id. at 7.

The Hartford objected to this request on four grounds.  First, The Hartford claims these documents are irrelevant.  Next, The Hartford asserts that the production of personnel files would violate employees' right to privacy. The Hartford argues that these documents are proprietary and confidential and include trade secrets.  Finally, The Hartford objected on the basis that the information is requested primarily to cause undue expense and that the prejudice associated with producing the requested documents outweighs any potential probative value.  Id.

Mr. Nye asserts that personnel files may be relevant to show a "improper corporate culture" or improper handling of his claim.  Docket No. 17 at 11. These names of the listed employees appeared in Mr. Nye's claim file.  Docket No. 25 at 26.  The Hartford responds that only Lee Ann Lucas and her

22

supervisor Cory Blakeman were involved with Mr. Nye's claim on a day-to-day basis.  Id.  Mr. Melgoza and Mr. Campbell were involved in discussions regarding the authority to settle Mr. Nye's claim.  The Hartford objects to production of personnel files "in the chain of command above these individuals up to the heads of the claims department."  Id. at 26-27.  The Hartford agrees to produce the annual performance reviews of Ms. Lucas and Mr. Blakeman and will include performance reviews, pay criteria, and information regarding bonuses and incentives.  Id. at 24-25.

Both parties acknowledge that "the district court in the Western Division of the District of South Dakota has traditionally and uniformly allowed discovery of personnel files in insurance bad faith cases."  Docket No. 17 at 11 and Docket No. 25 at 24 (citing Lyon v. Bankers Life & Cas. Co., CIV. 09-5070-JLV, 2011 WL 124629 at *8 (D.S.D. Jan. 14, 2011)).  "Personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an 'improper corporate culture.' . . . However, personnel files also typically contain documents such as health care documents, life insurance, wages or salary, W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic deposits, and counseling information regarding employee assistance programs."  Signature Dev., 2012 WL 4321322, at *13 (citing Lyon, 2011 WL 124629 at *8).  The Hartford may redact or withhold these portions of the

employee files.

At first The Hartford asserted that the additional employees listed had limited involvement with Mr. Nye's claim.  Docket No. 25 at 26.  Later, The Hartford stated that the additional employees were not involved.  Docket No. 35 at 6.  The Hartford has not set forth specific facts to demonstrate that producing the relevant discovery would be overly broad, unduly burdensome, or oppressive.  Plaintiff's request Number 6 is granted subject to the provisions listed in the confidentiality agreement and redactions or withholding as discussed above.  Defendant's request that production be limited to Ms. Lucas and Mr. Blakeman is denied.

### 4. Plaintiff's Requests Nos. 8-12: Bonus or Award Programs, Goals, Targets, or Objectives, Performance Based Incentive Plans, and Increasing Productivity

Plaintiff's request numbers 8, 9, 10, 11 and 12 read as follows:

Request No. 8: Any and all documents that reference bonus or award programs for which the personnel handling or reviewing Plaintiff's claims are or have been eligible in the past, from January 2004, to the present.  This would include the claims handlers, supervisors, managers, or any other individuals in the chain of command up to the head of Claims.

Request No. 9: Any and all documents referring to goals, targets, or objectives from January 1, 2004, to present, which are or have been communicated to claims personnel handling worker's compensation claims.

Request No. 10:  Any and all documents in use since January 1, 2004, to Present, which relate to the manner in which claim personnel, including supervisory personnel, might receive salary, bonuses, commission or awards.

24

Request No. 11: Any and all documents used by or communicated to claims personnel from January 1, 2004, to present, that contain information about performance based incentive plans.

Request No. 12:  All documents relating to efforts to increase Defendant's claim department productivity or profitability from January 1, 2004, to present.

Docket No. 18-1 at 8-9.

The Hartford objected to the requests for bonus or award programs, goals, targets, or objectives on the grounds that they were irrelevant, overly broad, and sought proprietary information.  Id.  Further, The Hartford argued that these requests were "propounded primarily for the purpose of causing annoyance, harassment, and creating undue expense."  Id.  Finally, The Hartford stated that production would be unduly burdensome.  Id. The Hartford asserts that these request should be limited to Ms. Lucas and Mr. Blakeman.  Docket No. 28 at 7.

Courts in this District have held that "[q]ualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim."  Lyon, 2011 WL 124629 at * 10 (citing Pochat v. State Farm Mut. Auto. Ins. Co., CIV 08-5015, 2008 WL 5192427, *5 (D.S.D. Jan. 11, 2008) ("such information [regarding employee award and financial bonus program is] ... relevant to plaintiff's bad-faith insurance and breach of contract claims....")).  Employee bonus plans can also be relevant to an award of punitive damages in an

25

insurance bad faith case.  <u>See id.</u> (citing <u>Torres v. Travelers Ins.</u>, CIV 01-5056

(Docket 327, pp. 29-31, 43) (D.S.D. 2009); <u>see also</u> <u>Lillibridge v. Nautilus Ins.</u>

<u>Co.</u>, CIV 10-4105, 2013 WL 1896825 at *11 (D.S.D. May 3, 2013).

     In <u>Lyon</u>, the request for bonus or award information was limited to one

department.  Here, Request 8 is limited in scope to those "handling or

reviewing Plaintiff's claims"  and Request 9 is limited in scope to "claims

personnel handling worker's compensation claims."  Requests 10, 11, and 12

shall be limited in scope to "claims personnel handling worker's compensation

claims."  The Hartford has not demonstrated how production will be unduly

burdensome.  Any confidential or proprietary information can be protected by

the confidentiality agreement in place.  Requests 8-12 are granted, with the

limitation that Requests 10,11, and 12 shall be limited in scope to "claims

personnel handling worker's compensation claims."

### 5.    Plaintiff's Request No. 13: Loss Ratios

Plaintiff's Request 13 reads as follows:

> All documents relating to efforts to reduce loss ratios or claim severity
> costs on workers compensation coverage from January 1, 2004, to
> present.  This Request includes all documents relating to claim
> severity or loss ratios for workers compensation coverage on either a
> national level, regional level, branch level, or individual adjuster level,
> or any other criteria whatsoever.

     The Hartford objected to this request on the grounds that it was overly

broad, unduly burdensome, and sought irrelevant, proprietary and confidential

information.  Further, The Hartford alleges this request is "propounded

26

primarily for the purpose of causing annoyance, harassment, and creating undue expense."  The Hartford also asserts that the term "claims severity experience" is undefined, vague, and ambiguous.[3]

Mr. Nye asserts that information relating to loss ratios is relevant to how employees are rewarded for keeping costs low.  The Hartford asserts that it does not possess any responsive documents to this request and alternatively that the request does not specify with particularity the documents plaintiff seeks.  Because "[c]laims ratios are inherently tied to bonus programs," Request No. 13 is granted for the same reasons Requests 8-12 were granted. See Lyon, 2011 WL 124629 at *10.  To the extent that The Hartford possesses responsive documents, The Hartford shall turn these over to plaintiff.

### 6.    Plaintiff's Request No. 16: Site Map

Plaintiff's Request Number 16 reads as follows:

> A site map of any company website available to Defendant's claim handlers that contains any kind of information about how claims are to be handled, or about company directives, bulletins, or company developments, or company news, or company philosophies, or any other matters related to the company.

The Hartford asserts that it does not maintain a site map.  Docket No. 25 at 28.  This court cannot order the defendant to produce what it does not possess.  Accordingly, plaintiff's motion to compel as to this discovery request

---

[3] As Mr. Nye notes, this term does not appear in the request.  See Docket No. 17 at 13 n.1.  Perhaps The Hartford was referring to the term "claim severity costs."

is denied as moot.  Defendant's request that production be limited in this

instance is denied as moot because there is nothing to produce.  Sanctions

shall apply should it come to light at a later date that responsive documents

did indeed exist.

### 7.   Plaintiff's Request Nos. 18 & 19: Bad Faith Claims and Transcripts

Plaintiff's Requests Numbers 18 and 19 read as follows:

Request No. 18: Any and all documents that identify past litigation
involving claims of bad faith against the Defendant.  This information
is to be provided from January 1, 2004, to present.

Request No. 19: Any and all transcripts of depositions or trial
testimony of any of Defendant's employees or officers from January
1, 2004 to present, in any suit alleging bad faith.

Docket No. 18-1 at 11-12.

The Hartford objected to these requests on the grounds that they are

overbroad and unduly burdensome and seek information that is irrelevant,

confidential, and protected by the attorney-client privilege and the work

product doctrine.  The Hartford also asserts that the requested documents are

in the public record and that production would be "virtually impossible" due to

the costs and manpower that would be required.

Mr. Nye states that prior litigation claims and transcripts are relevant to

whether The Hartford knew it was acting in bad faith.[4]  The Hartford has

---

[4] As The Hartford notes, Mr. Nye includes a reference to The Hartford
refusing to defend lawsuits against Mr. Nye.  See Docket Nos. 17 at 14 and 28

28

detailed with specificity the costs and burden associated with producing all bad faith prior litigation materials.  See Docket No. 25 at 30-31 and Docket No. 31. The parties have since reasonably narrowed the relevant materials to 95 cases involving bad faith allegations against all Hartford entities for Worker's Compensation claims for the years 2006 to 2011.  Docket Nos. 33 at 11-12 and 35 at 8.  The remaining dispute centers on the method of production.

Whether The Hartford has engaged in similar conduct with other insureds that is similar to the facts of the instant case is relevant.  See Signature Dev., 2012 WL 4321322 at *15; Lyon, 2011 WL 124629 at *13. Likewise the transcripts related to prior lawsuits are relevant.  The Hartford has the benefit of access to the transcripts of the depositions of its officers or other personnel who have testified in bad faith cases relating to worker's compensation claims.  The information would certainly be available to The Hartford in preparation for this trial.  These transcripts are readily available to defendant and would be very difficult, if not impossible, for plaintiff to obtain. As the court noted in Lyon, "[t]he piecemeal process of obtaining this information by plaintiff would be extremely costly and contrary to the cause of providing a 'just, speedy, and inexpensive determination of every action . . . . ' "

at 8-9.  This court is only aware of the denial of benefits claims and has not been presented with any information that The Hartford refused to defend Mr. Nye.  As such this statement ("The transcripts will also identify other evidence that could be used to show The Hartford acted recklessly in refusing to defend the lawsuits against Nye.") has no bearing on the instant discovery motions.

<u>Lyon</u>, 2011 WL 124629 at *12 (citing F.R. Civ. P. 1).

Defendant has not provided a privilege log pursuant to Rule 26(b)(5)(A)(ii), but generally objects to disclosure of prior litigation materials based on attorney-client privilege and the work product doctrine. "Documents filed in other litigation, unless otherwise subject to a protective order under Rule 26(c), are not protected by either the attorney-client/work product privilege or proprietary privilege as those documents are filed as part of a court's record." <u>Id.</u> at *14. "Testimony of defendant's officers or personnel in previous litigation is, by its very nature, public testimony in an adversarial environment to which neither the attorney-client privilege nor the attorney-work product privilege could attach. A transcript of that testimony is not privileged." <u>Id.</u>

The Hartford offers to produce a list of these 95 lawsuits and suggests that Mr. Nye can obtain this publicly available information. Mr. Nye requests copies of the transcripts and relevant documents as this court recently outlined in <u>Signature Development</u>. <u>See</u> <u>Signature Dev.</u>, 2012 WL 4321322 at *16. To require Mr. Nye to obtain these documents when The Hartford already has access to them "places defendant at an unusually significant advantage over this individual plaintiff litigant." <u>Lyon</u>, 2011 WL 124629 at *14.

Accordingly, Mr. Nye's motion to compel as to Requests 18 and 19 is granted in part as follows: the Hartford is ordered to produce to plaintiff a copy

30

of the complaint and answer as to each of the 95 bad faith lawsuits relating to worker's compensation claims, including any amended complaints and answers thereto. In addition, if a dispositive motion was filed in any of these cases (a Rule 12(b)(6) motion to dismiss or a motion for summary judgment), defendant shall produce a copy of each of the briefs filed in regard to that dispositive motion, though not the supporting affidavits and other documents. If necessary, The Hartford must obtain these limited initial documents from either its in-house counsel, or from outside counsel who represented The Hartford in each of these cases.  After plaintiff reviews these limited initial pleadings, plaintiff may identify files that he believes have a factual or legal nexus to his own claims in this case and request copies of the entire litigation file as to those related claims. The Hartford shall produce the transcripts of deposition or trial testimony of its employees and officers from these cases as requested by plaintiff in their entirety.  The Hartford's motion to limit the scope of these files is denied as moot as the parties have subsequently agreed to the limitation of 95 cases.  The Hartford's request to produce only a list of cases is denied.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that pursuant to Rule 26(c) and good cause appearing, defendant's motion for protective order [Docket No. 24] is granted in part as follows:

1.    The court adopts and incorporates the parties' stipulated confidentiality agreement [Docket No. 36-1].

2.    Counsel cannot file sealed documents in CM/ECF.  If it is necessary to attached a protected document to a pleading, counsel shall file an attachment to the pleading with a notation that the protected document is being delivered to the Clerk of Court to be filed under seal pursuant to the terms of this order.  Counsel must manually serve the protected document on opposing counsel.

3.    When the protected document is received by the Clerk of Court, it will be scanned and added to CM/ECF as a sealed attachment. The original will be destroyed after scanning unless counsel delivers the protected document to the Clerk of Court with a written request to return the document to counsel.

4.    To the extent the above provisions conflict with the confidentiality agreement, the above provisions govern.

IT IS FURTHER ORDERED that plaintiff's motion to compel [Docket No. 17] is granted in part and denied in part as more specifically described above; defendant's motion for protective order to limit the scope of discovery [Docket No. 24] is denied in part as described above.

IT IS FURTHER ORDERED Plaintiff has not requested an award of attorneys fees or any other sanction in connection with his motion.  For that

32

reason, none are granted.

IT IS FURTHER ORDERED that the parties shall, within 14 days, propose new deadlines to accomplish the orderly administration of this case.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated June 18, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE